NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER HALL, : | CLOSED |
| : | |
| Petitioner, : | Civil Action No. 11-4148 (SRC) |
| : | |
| v. : | **O P I N I O N** |
| : | |
| GREG BARTKOWSKI et al., : | |
| : | |
| Respondents. : | |

**Chesler,** District Judge:

Petitioner Christopher Hall ("Petitioner") filed a Petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254(a), challenging a judgment of conviction entered by the Superior Court of New Jersey. See Docket Entry No. 1. This Court advised Petitioner of his rights under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and ordered Respondents to answer the Petition. See Docket Entries Nos. 2 to 10. Respondents duly complied, and Petitioner waived his right to traverse. See Docket Entries Nos. 10 and 16. For the reasons expressed below, the Court will dismiss the Petition and decline to issue a certificate of appealability. See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

**I.    BACKGROUND**

The state courts described the underlying events as follows:

On August 26, 2001, around 12:30 a.m., Taha Ramadan, Tarek Ramadan, Maharan Ramadan, Said Ramadan, and Tara Rodriguez ([collectively,] the victims) were in Eastside Park "[h]anging out and convers[ing]" when [Petitioner] emerged from a van and approached the victims to ask if anyone had marijuana. When the victims responded no, [Petitioner] asked for a cigarette, and as he began

>to walk away "he turned around, brandished a weapon a handgun and asked the victims to empty their pockets." By this time, Kenton Rodney had also emerged from the van, wielding a knife; he collected the group's jewelry, cash and cell phones. [Petitioner] and Rodney then re-entered the van and drove away. The victims immediately notified the police and gave a partial license plate number and a description of the van. At 1:10 a.m., Officer Joseph Ricciardi received a radio transmission regarding the robbery. Shortly thereafter, Officer Ricciardi observed the van, followed it briefly, then pulled it over with police unit backup. The three occupants, [Petitioner], Rodney and Claven Anderson (the driver), were removed from the van and placed in the police cars. A fully loaded nine millimeter semiautomatic reduction Luger, a knife, and two cell phones were recovered from the van. Approximately thirty minutes later the victims observed [Petitioner], Rodney and Anderson in the back seat of the police car and identified [Petitioner] and Rodney as the two men who held them up at gun and knifepoint. The victims also observed that all three were wearing jewelry they had given to defendant and Rodney during the hold up.

State v. Hall, 2010 WL 5185477, at *1 (N.J. Super. Ct. App. Div. Dec. 6, 2010) (brackets and ellipses removed).[1]

Petitioner was tried to a jury and found guilty of first-degree robbery, aggravated assault and weapon-related offenses. See id. Petitioner's conviction was affirmed on direct appeal, and the Supreme Court of New Jersey denied certification. See id. at *2; see also State v. Hall, 190 N.J. 255 (2007). Petitioner then filed a post-conviction relief ("PCR") application. The Law Division conducted a hearing and dismissed his application. Said dismissal was affirmed by the Appellate Division, see Hall, 2010 WL 5185477, at *8, and the Supreme Court of New Jersey denied certification. See State v. Hall, 207 N.J. 35 (2010). The Petition within followed.

Here, Petitioner raised eight challenges,[2] namely:

---

[1] Anderson (the driver) testified against Petitioner. See Docket Entry No. 16-23, at 3.

[2] Petitioner designated his first three challenges as "grounds" and the remaining ones as "points." While he numerated these grounds and points consecutively, his numeration omitted to designate the fifth challenge.

2

| | |
|---|---|
| One: | Procedural History Preliminary Statement Petitioner Was Deprived of a Guaranteed Right to Counsel in Violation of Both Federal & State Constitutions.  Plea Agreement – Identification – Cross Examination - Discovery |
| Two: | Petitioner's Right to Direct Appeal Was Denied, Due to Ineffective Assistance of Counsel, Failure to Communicate with Petitioner & Dil[i]gently Review Trial Transcripts for Adequate Brief. . . . |
| Three: | Petitioner Was Deprived of His Sixth Amendment Right to Effective Assistance of Trial Counsel.  As a Resul[t] of Ineff[e]ctive Assistance of Counsel, in Particular the Failure to Investigate and Consider an Alib[i] Defense, . . . Petitioner Was Deprived of His Right to a Fair Trial. . . . |
| Four: | . . . Petitioner's Sentence Should Be Evaluated Pursuant to State v. Natale, 184 N.J. 458 (2005). |
| Six: | [Petitioner] received ineffective assistance of trial counsel in violation of his Sixth Amendment Constitutional Right to Counsel.  [Petitioner] was denied a fair trial contrary to his Fourteenth Amendment Constitutional Right to Due Process. |
| Seven: | The Defendant Received Ineffective Assistance Of Appellate Counsel in Violation of His Sixth Amendment Constitutional Right to Counsel. |
| Eight: | An Evidentiary Hearing Is Warranted |
| Nine: | The State's Disproportionate Exercise of Peremptory Challenges Against Black Jurors Deprived [Petitioner] of His Rights to Trial by an impartial Jury and to equal protection of law, necessitating reversal. . . . |

Docket Entry No. 1, at 6-17 (capitalization in original).[3]

## II.   STANDARD OF REVIEW

The general standard of federal habeas review is long-established, and it sets forth a narrowly-tailored test.  See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) ("As amended by

---

[3] Thus, Petitioner's claims could be subdivided into five groups: (a) an attack on the performance of his trial counsel; (b) an attack on the performance of his appellate counsel; (c) an attack on the prosecutor's exercise of peremptory challenges; (d) a request for an evidentiary hearing; and (e) a request to assess Petitioner's sentence under a certain state case law.

3

AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner"). Section 2254(a) permits a federal court to entertain only claims alleging that a person is held in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In addition, when a state court has adjudicated a petitioner's federal claim on the merits, a district court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" Parker v. Matthews, 132 S. Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).[4]

## III.   DISCUSSION

### A.   Assistance of Counsel Claims

The Sixth Amendment, applicable to states through the Due Process Clause of the

---

[4] Consequently, the starting point of federal habeas review under § 2254(d)(1) analysis is to determine the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). A decision is "contrary to" a Supreme Court holding, within the meaning of 28 U.S.C. § 2254(d)(1), if: (a) the state court outright "contradicts the governing law set forth in [the Supreme Court] cases"; or (b) the state court "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Notably, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (quoting Williams, 529 U.S. at 410). Correspondingly, the standard posed by federal habeas review "is a difficult to meet, [since it is a] highly deferential standard for evaluating state-court rulings, [and that standard] demands that state-court decisions be given the benefit of the doubt." Cullen, 131 S. Ct. at 1398 (citations and internal quotation marks omitted).

Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI; see also Strickland v. Washington, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687.

First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.[5] The court must then determine whether, in light of all the circumstances at the time, the identified errors were so egregious that they were outside the wide range of professionally competent assistance.[6] See id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. As the Supreme Court explained,

> [i]n making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the

---

[5] See also, Strickland, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy"); Thomas v. Varner, 428 F. 3d 491, 499 (3d Cir. 2005) ("To overcome the Strickland presumption that, under the circumstances, a challenged action might be considered sound trial strategy, a habeas petitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy").

[6] Cf. Kates v. Moore, 2009 U.S. Dist. LEXIS 77000, at *89 (D.N.J. Aug. 27, 2009) ("it is entirely proper [for the court sitting in habeas review] to engage in record-based speculation as to what counsel's strategy might have been" for the purposes of examining the "petitioner's attempt to disprove the existence of a possible sound strategy") (quoting Thomas v. Varner, 428 F.3d at 500 n.8).

> entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.[7]

The Strickland test applies to the performances of both trial and appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). When the issue is appellate counsel's failure to raise specific issues, a petitioner satisfies the first Strickland prong by showing that appellate counsel was "objectively unreasonable [i.e.,] that counsel unreasonably failed to discover [arguably] nonfrivolous issues and to file a merits brief raising them." Smith v. Robbins, 528 U.S. 259, 285 (2000). An arguably non-frivolous issue is "one that counsel can argue in good faith with some potential for prevailing." Id. Consequently, the general principle established by Smith is that appellate counsel need not raise every non-frivolous issue on appeal; he "may select from among them in order to maximize the likelihood of success on appeal." Id. at 288; see also Jones v. Barnes, 463 U.S. 745, 750 (1983) (rejecting "per se rule that appellate counsel must raise every nonfrivolous issue").

### 1. Challenges to the Trial Counsel's Performance Are Without Merit

Petitioner's challenges One, Three and Six focus on the performance of his trial counsel. The first of these challenges mentions, without a clarification, "Plea Agreement – Identification –

---

[7] The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

Cross Examination - Discovery," the next one asserts "Failure to Investigate and Consider an Alib[i] Defense" and the last one offers merely Petitioner's conclusion that the trial counsel's errors were such that Petitioner was denied a fair trial.

The state courts addressed somewhat related challenges raised during Petitioner's PCR proceedings and noted that, in his PCR application, Petitioner asserted that his girlfriend and mother would have testified that, at the time of the robbery, Petitioner was at his girlfriend's home attending his daughter's birthday party.[8]  See Hall, 2010 WL 5185477, at *4.  The state courts found the trial counsel's election (not to call the girlfriend and mother as witnesses) well warranted, reasoning that the jurors would not have credited these witnesses' testimonies in light of the mass of testimonial and physical evidence against him, i.e., the testimonies by the victims of the robbery and the driver in Petitioner's get-away car and the proffering of the gun, the knife and the victims' belongings found by the police in the get-away car carrying Petitioner, Rodney and the driver.  See id. (also observing that Petitioner's mother and girlfriend would likely be perceived by the jurors as witnesses biased in Petitioner's favor and, thus, capable of perjurious testimony due to their emotional attachment to Petitioner).  The state court also examined the record and found the amount of contact between Petitioner and his trial counsel sufficient, and the counsel's efforts to challenge, at trial, the correctness of the State's witnesses' identification of Petitioner well-developed.

Petitioner's unelaborated phrase "plea agreement," fails to state a viable claim.

---

[8] Petitioner has not submitted, in this matter, any affidavit from his girlfriend and/or mother as to what they would have testified.  However, since that issue was adjudicated on its merits in the state fora, this Court accepts the state courts' factual findings as to the content of such hypothetical testimonies.  See Cullen, 131 S. Ct. 1388.

> The United States Supreme Court has long recognized that "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." Weatherford v. Bursey, 429 U.S. 545, 561 (1977); United States v. Osif, 789 F.2d 1404, 1405 (9th Cir.1986) ("a defendant does not have a constitutional right to a plea bargain"). Defendant cites no authority that a defense attorney has a duty to initiate plea negotiations. This court could not locate any authority obligating defense counsel to seek a plea agreement on the defendant's behalf. See e.g., Welch v. United States, 370 F. App'x 7393 (7th Cir. 2010) ("It is well-established . . . that counsel does not have an absolute obligation to pursue plea negotiations in every case"); United States v. Huddy, 184 F. App'x 765, 767 (10th Cir. 2006) (rejecting the defendant's argument that her counsel was ineffective for failing to initiate plea negotiations); United States v. Cabaccang, 2010 U.S. Dist. LEXIS 75813 (D. Guam, July 28, 2010) ("Because trial counsel was under no duty to initiate plea negotiations, he was not required to request a plea agreement from the Government prosecutor").

United States v. Alvarado, 2011 U.S. Dist. LEXIS 58682 (S.D. Cal. May 27, 2011) (dismissing § 2255 challenges analogous to those at bar and pointing out the petitioner's error in relying on the case law addressing the circumstances where an actual plea offer was made).[9] Thus, the fact that Petitioner was tried to a jury cannot operate as a basis for a viable claim.

Petitioner's usage of the word "Discovery" also fails to state a viable claim: there is no right to "discovery" in a criminal proceeding. While, under Brady v. Maryland, 373 U.S. 83 (1963), the prosecution has the duty, under the Due Process Clause, to insure that criminal trials are fair by disclosing evidence favorable to the defendant, "[t]here is no general constitutional right to [any witness] discovery in a criminal case," Weatherford v. Bursey, 429 U.S. 545, 559 (1977), and the holding of "Brady did not create one [since] 'the Due Process Clause has little to

---

[9] See also United States v. Ramos-Marrufo, 2012 U.S. Dist. LEXIS 150075, at *17 (E.D. La. Oct. 17, 2012) ("To show that he was prejudiced by his attorney's failure to initiate plea negotiations, [the petitioner] must do more than speculate about potential benefits that he was denied; he must provide concrete evidence that a favorable plea offer would have been available to him"); United States v. Cabaccang, 2010 U.S. Dist. LEXIS 86163, at *37 (D. Guam Aug. 23, 2010) ("The Petitioner cites no authority that a defense attorney has a duty to initiate plea negotiations. Federal circuits have not found that such duty exists").

say regarding the amount of discovery which the parties must be afforded.'" Id. (quoting Wardius v. Oregon, 412 U.S. 470, 474 (1973)).[10]  Here, Petitioner seemingly faults his counsel for failing to do what his counsel simply could not do.

The remainder of Petitioner's challenges appear to relate to: (a) the testimonies his mother and girlfriend might have provided; and (b) the amount of communication between him and his counsel.  However, a habeas petitioner cannot establish ineffective assistance of counsel by "assert[ing] . . . a mechanical calculation of alleged meetings and then, self-servingly, declare[ing] the amount of such alleged meetings insufficient," Cox v. Ricci, 2010 U.S. Dist. LEXIS 115711, at *15-16 (D.N.J. Oct. 29, 2010).[11]  Where "Petitioner maintains that his counsel spent insufficient time meeting with Petitioner and/or discussing the strategy of the case [but the] transcript of Petitioner's trial shows that Petitioner's counsel was well-aware of off key aspects and minute details of Petitioner's case and consistently and ardently presented Petitioner's position . . . throughout every stage of the trial, . . . Petitioner's disappointment with the amount of time he spent communicating with his defense attorney fails to establish that his counsel did not function as a meaningful adversary to the State." Gambino v. Warden of N.J. State Prison, 2013 U.S. Dist. LEXIS 52, at *40-41 (D.N.J. Jan. 2, 2013).  Here, nothing in the record suggests that the amount of Petitioner's communication with his trial counsel violated Petitioner's rights.

---

[10] See also Leland v. Oregon, 343 U.S. 790, 801-02 (1952) (same); People v. Gonzalez, 51 Cal. 3d 1179, 1258 (1990) (the Constitution does not confer a general right to criminal discovery in either state and federal matters).

[11] Accord Layne v. Moore, 90 F. App'x 418 (3d Cir. 2004) (affirming dismissal of habeas challenge asserting that trial counsel was ineffective because counsel met with the petitioner only three times prior to trial); Brownlee v. Haley, 306 F.3d 1043 (11th Cir. 2002) (denying habeas relief for claim that trial counsel met with the petitioner only two times for 10 to 15 minutes each).

Finally, the Court agrees with the state court's conclusion that Petitioner was not prejudiced by his trial counsel's election (not to call his girlfriend and mother as witnesses) within the meaning of the second Strickland prong: the mass of eye-witness and physical evidence against Petitioner was nothing short of damning, and there is not reasonable probability that the testimonies of two women (having a self-evident interest in providing Petitioner with an alibi) would have affected conclusions of a reasonable trier of fact. Correspondingly, the state court's dismissal of Petitioner's challenges to his trial counsel's performance was not an unreasonable application of Supreme Court precedent.

### 2. Challenges to the Performance of Appellate Counsel Are Meritless

Petitioner's challenge Two focuses on the appellate counsel's performance. Petitioner is asserting the counsel's failure to sufficiently examine trial transcripts or communicate with Petitioner; he also asserts that the appellate counsel's assistance was "ineffective" in an unspecified fashion. However, the appellate counsel raised four thoughtfully presented, non-frivolous appellate challenges (one of which is repeated by Petitioner verbatim in this matter, and two others that correlate to the position Petitioner is now taking in his challenge Four). See Docket Entry No. 16-18. Hence, Petitioner's challenge to the performance of his appellate counsel cannot meet either prong of Strickland, as elaborated upon in Smith, 528 U.S. at 285, and Jones, 463 U.S. at 750. Correspondingly, the state court's dismissal of this claim was not an unreasonable application of Supreme Court precedent.

### B. Request for an Evidentiary Hearing

It appears that Petitioner's challenge Eight merely replicates the request for an evidentiary hearing made in the brief filed by his PCR counsel. See Docket Entry No. 16-19, at 2. The Law

10

Division already provided Petitioner with such a hearing.  In contrast, under Cullen, 131 S. Ct. 1388, the Court has no basis for expanding the record beyond that ruled upon by the state courts.

      C.     **Challenge to Petitioner's Sentence Under the State Law**

Petitioner's challenge Four seeks evaluation of his sentence under State v. Natale, 184 N.J. 458 (2005), a New Jersey Supreme Court decision.  Sentencing is generally considered a matter of state criminal procedure, which does not fall within the purview of federal habeas review.  See United States v. Cepero, 224 F.3d 256, 267 (3d Cir. 2000), cert. denied, 531 U.S. 1114 (2001); Ervin v. Beyer, 716 F. Supp. 163, 165 (D.N.J. 1989); Grecco v. O'Lone, 661 F. Supp. 408, 415 (D.N.J. 1987); see also Johnson v. Beto, 383 F.2d 197, 198 (5th Cir. 1967), cert. denied, 393 U.S. 868 (1968).  Absent some constitutional violation, federal courts cannot review a state's alleged failure to adhere to its own sentencing procedure.  See Rorie v. Beard, 2005 U.S. Dist. LEXIS 23813 (E.D. Pa. April 7, 2005) (citing Branan v. Booth, 861 F.2d 1507 (11th Cir. 1988)).  Thus, a federal court will, generally, not reevaluate a sentence in a habeas proceeding unless it exceeds the relevant statutory limits.  See Jones v. Superintendent of Rahway State Prison, 725 F.2d 40 (3d Cir. 1984); see also Williams v. Duckworth, 738 F.2d 828, 831 (7th Cir. 1984), cert. denied, 469 U.S. 1229 (1985) ("As a general rule, federal courts will not review state sentencing determinations that fall within statutory limits"); Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir. 1975) ("This Court will not upset the terms of a sentence within statutory limits unless so disproportionate to the offense as to be completely arbitrary and shocking").  Moreover, federal courts will not interfere with a state's sentencing scheme unless the petitioner can show that no reasonable sentencing court would have invoked the same relevant considerations to justify imposition of such sentence.  See Lewis v. Jeffers, 497 U.S. 764, 783 (1990).  "While

normal sentencing proceedings are not immune from all due process attacks, the Supreme Court has required only minimal due process protections in those proceedings." United States v. Davis, 710 F.2d 104, 106 (3d Cir.), cert. denied, 464 U.S. 1001 (1983) (citations omitted).

Here, Petitioner's challenge Four relies on Natale, supra. To the extent Natale represents New Jersey law, Petitioner's challenge is simply not cognizable. See Cepero, 224 F.3d at 267; Ervin, 716 F. Supp. at 165; Grecco, 661 F. Supp. at 415. However, being mindful of the fact that Natale was based on Blakely v. Washington, 542 U.S. 296 (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000), the Court finds it warranted, out of abundance of caution, to reflect on Petitioner's sentence through the prism of Blakely-Apprendi.[12]

Neither during his state proceedings nor here did Petitioner assert that his sentence exceeded the maximum his trial judge could impose on the basis of the facts proffered to the jury; rather, he maintains that the trial judge's selection of the term from the upper range of the permissible presumptive sentence was an error. See Docket Entry No. 16-18, at 28 (maintaining that the judge selected a term within the upper range by unduly taking into consideration the circumstances of the crimes of which Petitioner was found guilty, the risk that Petitioner might commit another offense and the need for deterrence).

However, since the selection was made from the presumptive sentencing range ensuing from the findings made by the jurors, see Hall, 2010 WL 5185477, at *7 (detailing the same at length), Petitioner's sentence implicated no constitutional concerns, satisfying both the Apprendi

---

[12] Under Apprendi, other than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt. In Blakely, the Supreme Court has defined the statutory maximum for the purposes of an Apprendi-based analysis as the maximum sentence a judge may impose solely on the basis of *the facts reflected in the jury verdict* or admitted by the defendant.

12

and Blakely requirements.[13] Thus, the state court's dismissal of his claim correlating to the instant challenge Four was not an unreasonable application of Supreme Court precedent.

### D.     Prosecutor's Exercise of Peremptory Challenges

Reflecting of Petitioner's claim asserting the prosecutor's undue resort to four peremptory challenges, the state courts observed as follows:

> [Petitioner] argue[s] that the prosecutor's use of peremptory challenges against African-American venire persons during jury selection violated [his] constitutional rights to an impartial jury, a fair trial, and equal protection.  We agree with the State and the trial judge that the prosecutor's explanations for the peremptory challenges were not "sham excuses belatedly contrived to avoid admitting acts of group discrimination."  The reasons given by the prosecutor explaining his excusal of all four prospective jurors were not dependant on their race.  Rather, they were based on circumstances and facts relevant to the[se] individuals' ability to serve as jurors in a criminal trial. [Specifically, exercise of peremptory challenges on the basis of these individuals stating that: (a) a juror was experiencing] fear of retaliation by [Petitioner or by his acquaintances, since the juror lived in the area where the crime at issue was committed; or (b) a juror stating that she was] raped and subsequently [experienced] dissatisfaction with the handling of [her ordeal by] the prosecution [and the State's acceptance of her perpetrator's guilty plea in exchange for a very lenient sentence; or (c) a juror] downplaying the significance of a crime [committed against her own son and expressing her inclination to forgive all such criminal actions, stating, "Oh, it was just, you know, just boys"; or (d) the fact of a juror] being tardy for jury selection, arguably without a legitimate excuse, while [appearing in the court] wearing sunglasses [throughout the whole day in the court, was proper, since such exercise of peremptory challenges was based on] facially neutral reasons.

State v. Hall, 2006 WL 889475, at *2 (N.J. Super. Ct. App. Div. Apr. 7, 2006).

A criminal defendant has no right to a petit jury composed in whole or in part of persons of his own race.  See Batson v. Kentucky, 476 U.S. 79, 85 (1986).  Only *purposeful* racial discrimination in jury selection violates a defendant's right to equal protection.  See id. at 86-89.

---

[13]  Moreover, Petitioner fails to offers this Court any basis to conclude that no reasonable judge would have made the same selection from the upper range of the permissible presumptive sentence applicable to the crimes of which Petitioner was found guilty by his jurors.

> [A] defendant may establish a prima facie case of purposeful discrimination [if] the defendant first . . . show[s] that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely [only] on the fact[s] as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. Finally, the defendant must show that these facts . . . raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. . . . Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors . . . . [T]he prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race . . . because of their shared race . . . . Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive . . . .

Batson, 476 U.S. at 96-98 (citations, internal quotation marks and footnotes omitted).

Here, the prosecutor's explanations were fact-based on race-neutral statements actually made by the venirepersons during the voir dire process (and, in addition, based on the record of one venireman's failure to appear in court, followed by his late showing and wearing sunglasses throughout the voir dire without a medical reason for such an affront). There is no fact offered by Petitioner (and none was located by the Court in the transcripts) suggesting that Petitioner did or even could established a prima facie case of purposeful discrimination. Moreover, the State met its burden at establishing a constitutionally solid basis for exercising peremptory challenges. Thus, the state courts' dismissal of Petitioner's claim was not an unreasonable application of the governing Supreme Court precedent. Moreover, since all Petitioner's challenges fail to state a claim meriting habeas relief, his Petition will be denied.

## IV. CERTIFICATE OF APPEALABILITY

The Court denies a certificate of appealability because Petitioner has not made "a

substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## V.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

  s/ Stanley R. Chesler  
STANLEY R. CHESLER  
United States District Judge

Dated:  April 3, 2013